## Reeser *versus* Johnson.

76   313
155   416

1. Johnson made an assignment for creditors, after which Reeser recovered a judgment against him adversely. Afterwards Johnson was adjudged bankrupt and the United States court decreed the assignment null and void, ordered it to be delivered up, to be cancelled and all the estate passed to the assignee in bankruptcy; the previous acts of the voluntary assignees being validated. The assignee in bankruptcy sold Johnson's real estate to Coover. Reeser not having proved his debt in bankruptcy issued execution on his judgment, levied on Coover's purchase and issued a venditioni. The court below restrained Reeser from proceeding on his executions; the order was reversed, the invalidity of Reeser's lien not being so clear as to justify it.

2. Under the proceedings in bankruptcy alone the bankruptcy assignee would not be entitled to the order, the judgment having been recovered before the bankruptcy proceedings commenced.

3. It is a general rule to permit a sheriff's sale of an alleged interest of the defendant in land; the question of title to be determined in an ejectment.

May 26th 1874. Before SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Cumberland county:* No. 93, to May Term 1874.

The proceedings in this case were under the following circumstances:—

On the 2d of February 1869, an action of debt was commenced by John B. Reeser against David Sponsler and William Y. Johnson. On the 17th of February 1869, William Y. Johnson and Samuel P. Johnson, who were partners, made a voluntary assignment of all their property, individual and partnership, to R. H. Thomas and William J. Stees, for the benefit of their creditors. On the 5th of March there was an award of arbitrators for $231.33 in the action of debt against Sponsler and William Y. Johnson. On the 19th of March 1869, proceedings in bankruptcy were commenced against the Johnsons, the voluntary assignment being one of the alleged acts of bankruptcy. During the pendency of these proceedings, the voluntary assignees sold some of the assigned property, real and personal. The Johnsons were adjudged bankrupts as of the 19th of March; and on the 22d of May, the register in bankruptcy assigned all the estate of the Johnsons to George Bitner, who had been chosen assignee in bankruptcy. Bills were filed in the Circuit Court of the United States by the petitioning creditor and the assignee in bankruptcy, to require the assignees, under the voluntary deed, to surrender the property conveyed to them, and deliver up their deed to be cancelled.

On the 16th of June the Circuit Court decreed:—

"That the assignment for the benefit of creditors in the proceedings mentioned, made by the bankrupts therein named to the said Stees and Thomas, is null and void, and that the same be cancelled and delivered up to the assignee in bankruptcy; so, how-

ever, and provided that all acts heretofore duly performed by them in execution of the trust, purporting to be vested in them under the said assignment, be deemed valid and effectual, on their duly accounting as hereinafter directed; and it is ordered that they desist, from and after this decree, from acting therein save as hereinafter directed. It is further ordered that they forthwith account to the assignee in bankruptcy for all proceeds of sales heretofore made by them, including the sale of real estate to Urich, and that they be allowed their reasonable expenses and charges. The account to be taken before a master to be appointed by this court, if either party so request, and that they surrender and deliver all the remaining assigned estate and effects, to the said assignee in bankruptcy. And that all costs be paid out of the assigned estate."

The assignees in the voluntary deed, under the decree of the Circuit Court, delivered all the remaining property, &c., of the bankrupts to the assignee in bankruptcy, who sold the personal estate of the bankrupts. He also sold two lots in the borough of Mechanicsburg, the individual property of William Y. Johnson, to Jacob Coover for $1300. On his judgment against Sponsler and Johnson, Reeser issued a fi. fa. on the 26th of September 1871; and on the 13th of November a levy was made on William Y. Johnson's interest in several lots of land, two of which were those sold by the assignee in bankruptcy to Coover. On December 18th 1871, No. 19, to January Term 1872, Reeser issued a venditioni, and the sheriff advertised the real estate levied on for sale on the 5th of January 1872.

The assignee in bankruptcy then presented a petition to the Court of Common Pleas of Cumberland county, setting forth the foregoing facts, and averring "that the said W. Y. Johnson, by the deed of assignment to the said Thomas and Stees, parted with all his interest in said real estate on Feb. 17th 1869, that the same became vested in your petitioner under the deed to him and by the decrees of the United States Circuit Court; that the judgment of the said Reeser is not a lien thereon, or upon any part thereof, because not obtained until March 5th 1869, after the said Johnson ceased to own any title thereto, and that a sheriff's sale thereof, as contemplated, will not divest the title, but will subject the estate of said William Y. Johnson to much and troublesome litigation in the hands of your petitioner, and impair the value of the title to that remaining unsold by your petitioner, to such an extent in view of several claimants therefor, growing out of said intended sheriff's sale, that it will be very difficult, as your petitioner believes and is informed, to make a sale thereof; and will further cause litigation, as your petitioner believes and is informed, relative to that portion of said real estate sold by him to said Jacob Coover.

"Your petitioner therefore prays your Honors to grant him an

order directing that the said sales by the sheriff of Cumberland county, advertised of said property, to take place on Jan. 5th 1872, may be stayed, and all further proceedings on said writ of venditioni exponas, No. 19, January Term 1872, may be stayed until your petitioner can come into court, at its next session, and ask for a rule to show cause why the said writ should not be stricken off, and why the said levy and condemnation on fi. fa. No. 17, November Term 1871, should not be set aside, and for such further relief as the case may require."

On the 2d of January 1872, the court ordered that all proceedings under the venditioni be stayed until the 8th of January, " to afford defendant an opportunity to obtain the necessary rules, &c., the levy to continue in the meantime."

On the 8th of January, the court granted a rule to show cause as prayed for, returnable the first Monday in March 1872.

Reeser filed an answer to the rule, admitting substantially the facts set out in the bill, and further saying, that he was informed and believed that the decree of the Circuit Court " adjudged the original deed of voluntary assignment made to Stees and Thomas on the 17th February 1869, to be null and void, and ordered it to be delivered up and cancelled, and that the property should go into the hands of the assignees in bankruptcy, which was accordingly done on or about the 16th day of June 1869, and that at that time his judgment was a lien; that he is further informed, and believes, that the original assignment being null and void as to creditors, and cancelled upon that account by the Circuit Court, did not interfere with his proceedings in the above-cited case, and that the assignees in bankruptcy took the property, subject to all the existing liens, and to the right of such creditors as had vigilantly pursued their remedies in the state courts and secured judgments; that he has not at any time taken part in the proceedings before the register in bankruptcy, nor has he proven and presented his claim to him for adjudication, but has preserved the lien of his judgment throughout, and in this proceeding now seeks by the process of law (the assignee refusing and failing to pay him), to make his money out of the land of one of the defendants, W. Y. Johnson; * * * that the lots of ground upon which your respondent claims his judgment to be a lien, were not disposed of by the original assignees under the deed of voluntary assignment, but remained unsold at the time the said assignment was declared null and void, and was cancelled. * * *

He prayed " that the order staying his writ of venditioni exponas may be removed at the cost of the defendant, and that he may be allowed to proceed to secure and recover his judgment in full, from the real estate owned by the said W. Y. Johnson individually, at the time he brought this suit and recovered his judgment."

[Reeser *v.* Johnson.]

After argument, the court (Junkin, P. J.), after an elaborate examination of the authorities and discussion of the case, concluded his opinion, saying:—

\* \* \* " The conclusion we reach is that the plaintiff has no lien.

" But how can we restrain? We cannot set aside the levy, and the right of the creditor to sell any interest which he believes his debtor has in land, is admitted. The only exception seems to be where such sale would be contrary to law, and up to this time the only clear exposition of this exception is found in Hunter's Appeal, 4 Wright 194; Winch's Appeal, 11 P. F. Smith 424, and Lyon's Appeal, Id. 15; and these are all cases of attempts to sell a wife's realty to pay her husband's debts, which the Act of 1848 expressly forbids. Even then a clear and indisputable title in the wife must be established. The reason given for interference is that it is contrary to law. But to sell A.'s property to pay B.'s debts is no less so. Both are against law and equity, and in Stockdale *v.* Ullery, 1 Wright 486, the power to restrain acts contrary to either equity or law, is admitted. In Winch's Appeal, the Supreme Court determine that under disputed facts as to title, there can be no interference; trial by jury is the remedy. Then the test must be this, that under a state of admitted facts the *law* draws its conclusions, and where it can assure, acts promptly by forbidding the thing to be done. No jury is needed; the facts are found and the law concludes. Now we have in this case all the facts admitted, and the only question of law arising is, has the plaintiff a lien on the land? We hold that he has not. There is no need of a jury when this plaintiff proposes to sell Coover's land to pay Johnson's debt; it can only be by reason of a lien thereon; without a lien he has no right. To sell without a lien is contrary to law; the purchaser will get no title; the process of the court will be used for deceitful and illusory purposes. Bidders will be misled, the real owner of the land vexed and harassed to his hurt. Under these circumstances, we believe the ends of justice will be met by arresting the execution at this point, and we will do so."

The court made the following order:—

" And now, 21st October 1873, it is hereby ordered, that John B. Reeser, plaintiff in judgment No. 98, April Term 1869, Common Pleas of Cumberland county, and also in the writs of execution issued thereon, refrain from selling the real estate levied upon under said writs of execution, so far as said real estate owned by Jacob Coover is concerned, being the same real estate conveyed to said Coover by George Bitner, as assignee in bankruptcy of W. Y. Johnson, the defendant."

Reeser took out a writ of error, and assigned the various orders of the court for error.

[Reeser v. Johnson.]

*J. Ritner* and *A. B. Sharpe*, for plaintiff in error.—A judgment obtained after an assignment for the benefit of creditors, but before the bankrupt's petition is filed, is a lien on the bankrupt's estate: McLean *v.* Meline, 3 McLean 200. No consideration of probable sacrifice for enforcing a debt in a state court will induce a United States court to restain the creditor for enforcing it: Ex parte Donaldson, 8 American L. R. N. S. 213; Biddle's Appeal, 18 P. F. Smith 13; Keller *v.* Denmead, Id. 449; In re Schnepf, 7 American L. R. N. S. 204; Parker *v.* Muggridge, 2 Story's R. 243; Wallace *v.* Conrad, 7 Phila. R. 114. If the lien be good, the plaintiff has a right to execution: Rohrer's Appeal, 12 P. F. Smith 498. A good title would pass under a sale on the execution: Fehley *v.* Barr, 16 P. F. Smith 196.

*J. Hays* (with whom was *R. M. Henderson*), for defendants in error, cited Buchanan *v.* Smith, Legal Intel., October 24th 1873.

Mr. Justice MERCUR delivered the opinion of the court, July 2d 1874.

The validity of the judgment against the defendant is unquestioned. It was regularly obtained by adverse proceedings, before any proceedings in bankruptcy were commenced against the defendant. The plaintiff claims it to be a lien on certain real estate, formerly owned by the defendant, and seeks to sell the same by virtue of execution issued on this judgment.

The assignee in bankruptcy of the defendant denies the existence of the lien. On application of the assignee, the court enjoined the plaintiff against selling the real estate conveyed by said assignee to Jacob Coover.

The general rule unquestionably is, to permit a sale of any alleged interest in land of the defendant in the judgment. If the defendant has no interest in the land, no title passes. The question of title is usually left to be determined in an action of ejectment: Hunter's Appeal, 4 Wright 194. It is true this case recognises the right of the court to enjoin against a sale of the real estate of the wife on an execution against her husband. It was supported on the express language of the statute absolutely prohibiting the property of a married woman from levy and sale for the debts and liabilities of her husband, and the unquestioned fact that the land was the exclusive property of the wife. It was there said, a clear case of title in the wife must be shown, " otherwise a court of equity will not interfere, but leave the creditor to pursue his process, and the purchaser at the sale to establish his title in ejectment."

It must be conceded, if the assignee in bankruptcy rests his right on the proceedings in bankruptcy alone, he is not entitled to

[Reeser *v.* Johnson.]

the order he has procured. The award in favor of the plaintiff was obtained several days before proceedings in bankruptcy were commenced against the defendant: Rohrer's Appeal, 12 P. F. Smith 498; Fehley *v.* Barr, 16 Id. 196; Keller *v.* Denmead *et al.*, 18 Id. 449. He therefore seeks to fortify his position by invoking the aid of the voluntary assignment previously made by the defendant in the judgment, for the benefit of his creditors, under the laws of this state. It appears, however, that one of the acts of bankruptcy charged in the petition filed against the defendant, was the execution of that very assignment, and he was declared a bankrupt by a general adjudication.

Upon bill in equity subsequently filed in the Circuit Court of the United States, by the petitioning creditor, and by the assignee in bankruptcy, against the assignees under state law, it was adjudged and decreed that said voluntary assignment was null and void; it provided, however, that all acts theretofore duly performed by the assignees under the assignment, for the benefit of the creditors, be deemed valid and effectual, on their duly accounting to the assignee in bankruptcy for what they had received, and that they surrender and deliver over to him all the remaining estate and effects. It was further ordered, that from and after said decree they desist from acting therein further than directed thereby.

This decree of the Circuit Court may be held sufficient to ratify the previous acts of the assignees under the laws of this state, and to prohibit their further action. Its binding force may extend to all persons and things brought within the jurisdiction of that court. The plaintiff in this case, however, was not a party to those proceedings. No question was there considered as to the lien of his judgment, nor as to his rights as a creditor of the bankrupt. He never presented or proved his claim before the register in bankruptcy. He in no manner took part in any of the proceedings in bankruptcy. He rested upon his judgment and relied upon the lien which he claims to have thereby acquired.

Without giving any binding opinion as to the validity of the lien claimed by the plaintiff, we feel constrained to say that its invalidity is not so clear as to justify the order made by the court below. The plaintiff should be at liberty to proceed and sell, and the purchaser to try his title by ejectment.

Order reversed.